1  Rebecca Edelson (No. 150464)
   STEPTOE & JOHNSON LLP
2  2121 Avenue of the Stars, Suite 2800
3  Los Angeles, CA 90067
   Phone: (310) 734-3200
4  Fax:    (310) 734-3300
   Email: redelson@steptoe.com
5
6  Steven K. Davidson (*pro hac vice* appl. to be submitted)
   Scott W. Doyle (*pro hac vice* appl. to be submitted)
7  STEPTOE & JOHNSON LLP
8  1330 Connecticut Ave., NW
   Washington, DC 20036-1795
9  Phone: (202) 429-3000
   Fax:    (202) 429-3902
10 Email: sdavidson@steptoe.com
          sdoyle@steptoe.com
11
12 ATTORNEYS FOR PLAINTIFF
   GENERAL INSTRUMENT CORPORATION
13

ORIGINAL
FILED

SEP - 6 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

14
15           UNITED STATES DISTRICT COURT
16          NORTHERN DISTRICT OF CALIFORNIA
17             SAN FRANCISCO DIVISION

WHA

18 GENERAL INSTRUMENT CORPORATION )   Case No.: C 07 46177
19 (d/b/a Home & Mobility Networks), a   )
   Delaware Corporation,                 )   **COMPLAINT FOR DECLARATORY**
20                                        )   **RELIEF**
                                          )
21            Plaintiff,                  )
                                          )   **JURY TRIAL DEMANDED**
22       vs.                              )
                                          )
23                                        )
   MACROVISION CORPORATION, a            )
24 Delaware Corporation,                  )
                                          )
25            Defendant.                  )
                                          )
26 _____ )
27
28

1
COMPLAINT

Plaintiff General Instrument Corporation for its claims against Defendant Macrovision Corporation, states and alleges as follows:

## NATURE AND BASIS OF ACTION

1.      This is an action for Declaratory Judgment under 28 U.S.C. §§ 2201, *et seq.*, and under the laws of the United States concerning actions related to patents under 28 U.S.C. § 1338(a), arising from an actual controversy between the parties with regard to the invalidity, unenforceability, and noninfringement of certain patents. In addition, GI seeks declaratory relief arising from an actual controversy between GI and Macrovision concerning the parties' rights and responsibilities under a license agreement.

2.      Plaintiff General Instrument Corporation, d/b/a Home & Networks Mobility, a wholly-owned subsidiary of Motorola, Inc. ("GI"), is a Delaware corporation, with its principal place of business at 101 Tournament Drive, Horsham, Pennsylvania, 19044.

3.      Defendant Macrovision Corporation is a Delaware Corporation with, upon information and belief, its principal place of business in Santa Clara, California.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction in accordance with 28 U.S.C. §§ 2201 and 2202 and, under the laws of the United States concerning actions relating to patents, 28 U.S.C. § 1338(a).

5.      This Court has personal jurisdiction over Macrovision because Macrovision's principal place of business is Santa Clara, California and it has had an office of business in San Francisco, California at all relevant times.

6.    Venue in this District is proper under 28 U.S.C. § 1391(b) and (c), as Macrovision's principal place of business is in Santa Clara, California and it has had an office of business in San Francisco, California at all relevant times.

## INTRADISTRICT ASSIGNMENT

7.    Pursuant to Civil Local Rule 3-2(c), Intellectual Property Actions are to be assigned on a district-wide basis. This civil action should proceed in the San Francisco Division because this action is related to *Macrovision Corp. v. Motorola, Inc.*, No. 07-04209 (SI), which is proceeding in the San Francisco Division.

## GI AND MACROVISION:
## BUSINESSES AND CONTRACTUAL RELATIONSHIP

8.    Set-top boxes ("STBs") are used to receive and decode digital television broadcasts in combination with the user's television. Set-top boxes fall into several categories, from the simplest that receive and unscramble incoming television signals to the more complex that will provide advanced services.

9.    GI is the leading provider of digital STBs, marked by thousands of successful digital video launches in the past decade.

10.    Macrovision offers anticopying technology that enables businesses to protect video content, *e.g.*, pay-per-view programming, by disallowing unauthorized copying.

11.    In June of 1991, GI entered into an agreement (attached hereto as Exhibit 1) (the "GI License") with Macrovision, under which Macrovision provided GI with a nonexclusive license to "design, develop, and manufacture" integrated circuit "chipsets" – one of the many components in STBs – that contain the anticopying technology. G.I. License §§ 1.2, 2.1.

12.    In addition, under the GI License, GI obtained the nonexclusive right to "manufacture, sell, and distribute" STBs with chipsets containing Macrovision's anticopying

technology. GI License § 2.1(b); <u>see</u> <u>also</u> Ex. 2 § 6 ("1994 Amendment") (amending GI License § 2.1).

13.    The anticopying technology licensed to GI under the GI License was embodied in three U.S. patents and foreign equivalents (defined in Section 1.5 of the GI License as the "Patents") plus other rights.

14.    In consideration for the anticopying technology licenses, GI agreed to pay an upfront fee of two hundred thousand dollars ($200,000), and a fee of twenty-five thousand dollars ($25,000) for every cable operator that makes commercial use of the licensed anticopying technology. GI License § 4.1.

15.    GI was one of the first – if not the first – substantial customer and licensee of Macrovision technology. The GI License was thus instrumental in introducing Macrovision to the market. GI essentially vouched for Macrovision in its competition for market share with the Eidak Corporation, which also offered anticopying technology that rendered television signals difficult if not impossible to playback from VCRs.

16.    The GI License, *devoid of a per STB royalty fee*, recognized GI's position as the first mover of Macrovision's anticopying technology.    GI even received a certain share Macrovision's future business. <u>See</u> GI License §§ 7.1, 7.2.

17.    The expectation of the parties to the GI License was beyond question that GI was to enjoy a per STB royalty-free license.

18.    This expectation of a per-STB royalty-free license was again confirmed in February 1994, when the GI License was amended (the "1994 Amendment") (attached hereto as Exhibit 2), as the 1994 Amendment is also *devoid of a per STB royalty fee*.

19.    As a result of the GI License and the 1994 Amendment, Macrovision never charged GI a per STB royalty fee.

20.    In addition to again confirming the expectation of the parties regarding the lack of a per STB royalty fee, the 1994 Amendment broadened the GI License so that Macrovision's licensed anticopying technology would include the Patents plus "any improvements made available by Macrovision." 1994 Amendment § 1; see also G.I. License § 1.1.

21.    By broadening the scope of the licensed anticopying technology, GI and Macrovision demonstrated their intent that the GI License would outlive the expiration of the patents that were initially listed in the GI License.

22.    GI has performed, and continues to perform, each and every condition, covenant, and obligation to be performed on its part, pursuant to the terms of the GI License and the 1994 Amendment, except as waived or excused by Macrovision.

## MOTOROLA AND MACROVISION:
## CONTRACTUAL RELATIONSHIP

23.    In September 1998, Motorola, Inc. ("Motorola"), through its business unit located in Austin, Texas, entered into a license agreement (the "Motorola License") for Macrovision's anticopying technology that called for a sixty (60) cent per STB royalty fee.

24.    At the time Motorola entered into the Motorola License, Motorola first entered the STB market.

25.    Motorola's entry into the STB market proved to be short-lived; Motorola withdrew from this market in early 2001, after the production of fewer that one hundred thousand (100,000) STBs.

26.    In 2004, Motorola's semiconductor group located in Austin, Texas was sold by Motorola to Freescale, Inc.

27.    GI was not and is not a party to the Motorola License; Motorola did not even acquire GI (by way of a stock purchase agreement) until January 2000, two years after the Motorola License was executed.

28.    Macrovision has admitted that GI "is in no way covered by" the Motorola License and until 2007, never attempted to charge GI a sixty (60) cent per STB royalty fee pursuant to the Motorola License. See ¶¶ 29-41, infra; see also Ex. 7

### GI HAS THE RIGHT TO INCORPORATE MACROVISION'S ANTICOPYING TECHNOLOGY IN ITS STBs

29.    GI has the right to manufacture, sell and distribute STBs with chipsets containing Macrovision's anticopying technology.  Accordingly, historically, Macrovision never contested GI's right to manufacture or distribute STBs containing such chipsets.

30.    For example, in August 2006, some confusion arose between Macrovision, Motorola, and GI when Macrovision contacted Motorola about a twenty-five thousand dollar ($25,000) payment due to Macrovision from GI under the GI License. See Ex. 3 at 1 (Sept. 5, 2005 email from B. Gilham to J. Silverio).

31.    Macrovision, recognizing that the GI License was in full force and controlled GI's sales of STBs with chipsets containing its anticopying technology, informed Motorola and GI that the payment was due under "Sections 4.1b and 4.1c" of the 1991 Agreement between "GI and Macrovision." Id. GI acknowledged the contract, and made the $25,000 payment.

32.    At the same time, Macrovision was demanding per STB royalty fees under the Motorola License for the shipments of other STBs to Mexico.

33.    In order to prevent further confusion between the parties, Motorola asked Macrovision to "identify Macrovision's position with regard to the licenses" held by Motorola

and its subsidiaries, including the GI License and the Motorola License. Ex. 4 at 2 (Oct. 4, 2006 email from J. Silverio to B. Gilham).

34.     Macrovision responded that the parties could resolve the "confusion" between the GI License and the Motorola License by agreeing to either (1) "terminate the old GI agreement and use the more recent [Motorola] agreement ('98)" or (2) terminate both and "put together a more applicable agreement." Ex. 4 at 1 (Oct. 4, 2006 email from B. Gilham to J. Silverio).

35.     Accordingly, Macrovision again confirmed that the GI License was in full force and controlled GI's sales of STBs with chipsets containing its anticopying technology.

36.     On March 13, 2007, Macrovision informed Motorola of its view that the base patents embodied in the Motorola License (including those embodied in the GI License) would expire in May 2007. However, Macrovision fully explained for the first time its position that Motorola would need a new license for seven (subsequently increased to eight) improvement patents under the Motorola License.    In total, Macrovision has stated that Motorola needs to license (or otherwise be infringing) Patents No. 5,315,448 ("'448 Patent"), 5,583,936 ("'936 Patent"), 6,381,747 B1 ("'747 Patent"), 6,516,132 B1 ("'132 Patent"), 6,836,549 ("'549 Patent"), 7,050,698 ("'698 Patent"), 7,085,380 ("'380 Patent"), and 6,501,842 ("'842 Patent"). However, Macrovision did not assert that GI's STBs were covered by the Motorola License. Rather, Macrovision expected to negotiate a new license and that "all STBs that were once controlled under the GI License and have been shipped under no license agreement since its expiration, would fall under this new ('07) agreement." Ex. 5 (Mar. 13, 2007 email from B. Gilham to J. Silverio).

37.     On May 30, 2007, Macrovision informed Motorola that it was prepared to send a formal notice of breach of contract under the Motorola License, *based on the sales of GI STBs*

1  with chipsets containing Macrovision's anticopying technology.  Ex. 6 (May 30, 2007 email

2  from B. Gilham to J. Silverio).

3          38.     On June 26, 2007, Macrovision changed direction again and, by way of its outside

4  counsel, informed GI that it *was not covered* by the Motorola License.  Ex. 7 (June 26, 2007

5

6  letter from C. Morrow to B. North) (The Motorola License only covers Motorola's subsidiaries

7  that "at the time of the agreement, were under ownership or control by Motorola . . . . Since

8  Motorola did not acquire General Instruments until January 2000, General Instrument is in no

9  way covered by the Motorola License.").  Therefore, Macrovision alleged that "all manufacture,

10

11 use, or sale" of GI STBs with chipsets containing Macrovision's anticopying technology is

12 unlicensed.  Id.

13          39.     Macrovision's    recent    claims    of    infringement    –    contradicting    several

14 contemporaneous statements – are incorrect.  GI has a current right under § 2 of the GI License,

15

16 as amended, to, among other things, "manufacture, sell, and distribute" STBs with chipsets

17 containing Macrovision's anticopying technology.  GI License § 2.1(b); see 1994 Amendment

18 §§ 1, 6.  Specifically, the GI License does not expire until the termination of the Patents which

19 embody the "Process."  Pursuant to the 1994 Amendment, the "Process" not only includes the

20

21 original "Patents," but also "any improvements made available by Macrovision."  Id. § 1.

22          40.     Moreover, without conceding that the GI License has in fact terminated, even if it

23 were terminated, the terms of the GI License and the 1994 Amendment refute Macrovision's

24 contention that GI has no rights post-termination of the GI License.  See GI License §§ 1.1, 13.5,

25 13.7(b); 1994 Amendment § 1.  As a result, GI has a license – express and implied – to

26

27 manufacture, sell and distribute STBs with chipsets containing Macrovision's anticopying

28 technology.

41.    GI, directly and through counsel, has repeatedly explained to Macrovision, both orally and in writing, that, as discussed above, the GI License has not terminated, and, even it has (as to which no concession is made), GI does not have the obligation to cease manufacturing or distributing STBs with chipsets containing Macrovision's anticopying technology.

### MACROVISION'S THREATS AGAINST GI

42.    Macrovision has ignored such explanation and has persisted in its baseless claims of infringement.

43.    First, Macrovision demanded that GI and Motorola pay per STB royalty fees not only on the expired Patents under the Motorola License but also on eight improvement patents. At the same time, however, Macrovision failed to provide GI with sufficient information to support its claims that the technology is covered by the eight patents and whether GI's STBs used this technology.  These eight additional patents are described in ¶¶ 47-64 below.

44.    Second, Macrovision also threatened to "take a variety of steps to insure that Motorola is not able to manufacture or sell STBs containing Macrovision-enabled integrated circuits," which included "the right to notify Motorola's IC [integrated circuit] suppliers that Motorola is no longer an authorized licensee of Macrovision entitled to receive and incorporate Macrovision-enabled ICs into its products."  Ex. 8 (July 12, 2007 letter from C. MacInnes to J. Silverio).

45.    Third, notwithstanding Macrovision's prior recognition that GI "is in no way covered by" the Motorola License, on July 30, 2007, Macrovision filed a complaint in California Superior Court (attached hereto as Exhibit 9) for breach of contract and relief against Motorola under the Motorola License based on GI's sale of STBs.    Three weeks later, Macrovision dismissed that action and sued Motorola for patent infringement and breach of the Motorola

License in this Court based on GI's sale of STBs.  In its Complaint, Macrovision claims that Motorola is infringing seven of the eight patents that Macrovision has accused Motorola of infringing in correspondence between the parties.

46.    Thus, through its actions and conduct, Macrovision has evidenced that a substantial controversy exists between parties – GI and Macrovision – having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## EIGHT ADDITIONAL MACROVISION PATENTS ALLEGEDLY SPECIFIC TO STBS

47.    As noted above, Macrovision has demanded that GI pay per STB royalty fees on eight improvement patents.

48.    Although these patents have been in existence for some time, Macrovision did not fully explain to GI (or Motorola) Macrovision's position on the licensing of those patents until March 2007.

49.    On May 24, 1994, United States Patent No. 5,315,448 (the "'448 patent") issued for a "Copy protection for hybrid digital video tape recording and unprotected source material." A true and correct copy of the '448 patent is attached hereto as Exhibit 10 and made a part hereof.

50.    Macrovision has asserted to GI that Macrovision is the owner of the '448 patent and has the right to enforce the '448 patent with respect to GI.

51.    On December 10, 1996, United States Patent No. 5,583,936 (the "'936 patent") issued for a "Video copy protection process enhancement to introduce horizontal and vertical picture distortions." A true and correct copy of the '936 patent is attached hereto as Exhibit 11 and made a part hereof.

52.    Macrovision has asserted to GI that Macrovision is the owner of the '936 patent and has the right to enforce the '936 patent with respect to GI.

53.    On April 30, 2002, United States Patent No. 6,381,747 (the "'747 patent") issued for a "Method for controlling copy protection in digital video networks." A true and correct copy of the '747 patent is attached hereto as Exhibit 12 and made a part hereof.

54.    Macrovision has asserted to GI that Macrovision is the owner of the '747 patent and has the right to enforce the '747 patent with respect to Motorola and GI.

55.    On December 31, 2002, United States Patent No. 6,501,842 (the "'842 patent") issued for a "Method and apparatus for modifying a video signal by back porch lowering." A true and correct copy of the '842 patent is attached hereto as Exhibit 13 and made a part hereof.

56.    Macrovision has asserted to GI that Macrovision is the owner of the '842 patent and has the right to enforce the '842 patent with respect to GI.

57.    On February 4, 2003, United States Patent No. 6,516,132 (the "'132 patent") issued for a "Method and apparatus for improving the effects of color burst modifications to a video signal." A true and correct copy of the '132 patent is attached hereto as Exhibit 14 and made a part hereof.

58.    Macrovision has asserted to GI that Macrovision is the owner of the '132 patent and has the right to enforce the '132 patent with respect to GI.

59.    On December 28, 2004, United States Patent No. 6,836,549 (the "'549 patent") issued for a "Method and apparatus for synthesizing and reducing the effects of video copy protection signals." A true and correct copy of the '549 patent is attached hereto as Exhibit 15 and made a part hereof.

60.    Macrovision has asserted to GI that Macrovision is the owner of the '549 patent and has the right to enforce the '549 patent with respect to GI.

61.    On May 23, 2006, United States Patent No. 7,050,698 (the "'698 patent") issued for a "Method and apparatus for synthesizing or modifying a copy protection signal using a lowered signal level portion." A true and correct copy of the '698 patent is attached hereto as Exhibit 16 and made a part hereof.

62.    Macrovision has asserted to GI that Macrovision is the owner of the '698 patent and has the right to enforce the '698 patent with respect to GI.

63.    On August 1, 2006, United States Patent No. 7,085,380 (the "'380 patent") issued for a "Method for modifying a copy protected video signal with a negative amplitude pulse." A true and correct copy of the '380 patent is attached hereto as Exhibit 17 and made a part hereof.

64.    Macrovision has asserted to GI that Macrovision is the owner of the '380 patent and has the right to enforce the '380 patent with respect to GI.

## COUNT I:
## DECLARATORY JUDGMENT
## NON-INFRINGEMENT OF THE '132 PATENT

65.    GI incorporates the allegations of paragraphs 1-64 as if fully set forth herein.

66.    Macrovision has alleged and claimed that GI has infringed the '132 patent.

67.    GI does not infringe any valid claim of the '132 patent and has not induced or contributed to the infringement of any valid claim of the '132 patent by another.

68.    GI is entitled to a judicial declaration that it does not infringe the '132 patent.

## COUNT II:
## DECLARATORY JUDGMENT
## INVALIDITY OF THE '132 PATENT

69.    GI incorporates the allegations of paragraphs 1-68 as if fully set forth herein.

70.     On information and belief, the '132 patent is invalid for failure to meet the conditions of patentability set forth in 35 U.S.C. § 102, § 103, and/or § 112.

71.     GI is entitled to a judicial declaration that the '132 patent is invalid.

## COUNT III:
## DECLARATORY JUDGMENT
## UNENFORCEABILITY OF THE '132 PATENT

72.     GI incorporates the allegations of paragraphs 1-71 as if fully set forth herein.

73.     On information and belief, the '132 patent is unenforceable for one or more of the grounds alleged in paragraphs 1-72 of this complaint and/or due to laches, waiver, estoppel and/or implied license.

74.     GI is entitled to a judicial declaration that the '132 patent is unenforceable.

## COUNT IV:
## DECLARATORY JUDGMENT
## NON-INFRINGEMENT OF THE '380 PATENT

75.     GI incorporates the allegations of paragraphs 1-74 as if fully set forth herein.

76.     Macrovision has alleged and claimed that GI infringes the '380 patent.

77.     GI does not infringe any valid claim of the '380 patent and has not induced or contributed to the infringement of any valid claim of the '380 patent by another.

78.     GI is entitled to a judicial declaration that it does not infringe the '380 patent.

## COUNT V:
## DECLARATORY JUDGMENT
## INVALIDITY OF THE '380 PATENT

79.     GI incorporates the allegations of paragraphs 1-78 as if fully set forth herein.

80.     On information and belief, the '380 patent is invalid for failure to meet the conditions of patentability set forth in 35 U.S.C. § 102, § 103, and/or § 112.

81.     GI is entitled to a judicial declaration that the '380 patent is invalid.

### COUNT VI:
### DECLARATORY JUDGMENT
### UNENFORCEABILITY OF THE '380 PATENT

82.     GI incorporates the allegations of paragraphs 1-81 as if fully set forth herein.

83.     On information and belief, the '380 patent is unenforceable for one or more of the grounds alleged in paragraphs 1-82 of this complaint and/or due to laches, waiver, estoppel and/or implied license.

84.     GI is entitled to a judicial declaration that the '380 patent is unenforceable.

### COUNT VII:
### DECLARATORY JUDGMENT
### NON-INFRINGEMENT OF THE '549 PATENT

85.     GI incorporates the allegations of paragraphs 1-84 as if fully set forth herein.

86.     Macrovision has alleged and claimed that GI infringes the '549 patent.

87.     GI does not infringe any valid claim of the '549 patent and has not induced or contributed to the infringement of any valid claim of the '549 patent by another.

88.     GI is entitled to a judicial declaration that it does not infringe the '549 patent.

### COUNT VIII:
### DECLARATORY JUDGMENT
### INVALIDITY OF THE '549 PATENT

89.     GI incorporates the allegations of paragraphs 1-88 as if fully set forth herein.

90.     On information and belief, the '549 patent is invalid for failure to meet the conditions of patentability set forth in 35 U.S.C. § 102, § 103, and/or § 112.

91.     GI is entitled to a judicial declaration that the '549 patent is invalid.

**COUNT IX:**
**DECLARATORY JUDGMENT**
**UNENFORCEABILITY OF THE '549 PATENT**

92.    GI incorporates the allegations of paragraphs 1-91 as if fully set forth herein.

93.    On information and belief, the '549 patent is unenforceable for one or more of the grounds alleged in paragraphs 1-92 of this complaint and/or due to laches, waiver, estoppel and/or implied license.

94.    GI is entitled to a judicial declaration that the '549 patent is unenforceable.

**COUNT X:**
**DECLARATORY JUDGMENT**
**NON-INFRINGEMENT OF THE '698 PATENT**

95.    GI incorporates the allegations of paragraphs 1-94 as if fully set forth herein.

96.    Macrovision has alleged and claimed that GI infringes the '698 patent.

97.    GI does not infringe any valid claim of the '698 patent and has not induced or contributed to the infringement of any valid claim of the '698 patent by another.

98.    GI is entitled to a judicial declaration that it does not infringe the '698 patent.

**COUNT XI:**
**DECLARATORY JUDGMENT**
**INVALIDITY OF THE '698 PATENT**

99.    GI incorporates the allegations of paragraphs 1-98 as if fully set forth herein.

100.    On information and belief, the '698 patent is invalid for failure to meet the conditions of patentability set forth in 35 U.S.C. § 102, § 103, and/or § 112.

101.    GI is entitled to a judicial declaration that the '698 patent is invalid.

**COUNT XII:**
**DECLARATORY JUDGMENT**
**UNENFORCEABILITY OF THE '698 PATENT**

102.    GI incorporates the allegations of paragraphs 1-101 as if fully set forth herein.

103.    On information and belief, the '698 patent is unenforceable for one or more of the grounds alleged in paragraphs 1-102 of this complaint and/or due to laches, waiver, estoppel and/or implied license.

104.    GI is entitled to a judicial declaration that the '698 patent is unenforceable.

**COUNT XIII:
DECLARATORY JUDGMENT
NON-INFRINGEMENT OF THE '936 PATENT**

105.    GI incorporates the allegations of paragraphs 1-104 as if fully set forth herein.

106.    Macrovision has alleged and claimed that GI infringes the '936 patent.

107.    GI does not infringe any valid claim of the '936 patent and has not induced or contributed to the infringement of any valid claim of the '936 patent by another.

108.    GI is entitled to a judicial declaration that it does not infringe the '936 patent.

**COUNT XIV:
DECLARATORY JUDGMENT
INVALIDITY OF THE '936 PATENT**

109.    GI incorporates the allegations of paragraphs 1-108 as if fully set forth herein.

110.    On information and belief, the '936 patent is invalid for failure to meet the conditions of patentability set forth in 35 U.S.C. § 102, § 103, and/or § 112.

111.    GI is entitled to a judicial declaration that the '936 patent is invalid.

**COUNT XV:
DECLARATORY JUDGMENT
UNENFORCEABILITY OF THE '936 PATENT**

112.    GI incorporates the allegations of paragraphs 1-111 as if fully set forth herein.

113.    On information and belief, the '936 patent is unenforceable for one or more of the grounds alleged in paragraphs 1-112 of this complaint and/or due to laches, waiver, estoppel and/or implied license.

114.    GI is entitled to a judicial declaration that the '936 patent is unenforceable.

**COUNT XVI:**
**DECLARATORY JUDGMENT**
**NON-INFRINGEMENT OF THE '448 PATENT**

115.    GI incorporates the allegations of paragraphs 1-114 as if fully set forth herein.

116.    Macrovision has alleged and claimed that GI infringes the '448 patent.

117.    GI does not infringe any valid claim of the '448 patent and has not induced or contributed to the infringement of any valid claim of the '448 patent by another.

118.    GI is entitled to a judicial declaration that it does not infringe the '448 patent.

**COUNT XVII:**
**DECLARATORY JUDGMENT**
**INVALIDITY OF THE '448 PATENT**

119.    GI incorporates the allegations of paragraphs 1-118 as if fully set forth herein.

120.    On information and belief, the '448 patent is invalid for failure to meet the conditions of patentability set forth in 35 U.S.C. § 102, § 103, and/or § 112.

121.    GI is entitled to a judicial declaration that the '448 patent is invalid.

**COUNT XVIII:**
**DECLARATORY JUDGMENT**
**UNENFORCEABILITY OF THE '448 PATENT**

122.    GI incorporates the allegations of paragraphs 1-121 as if fully set forth herein.

123.    On information and belief, the '448 patent is unenforceable for one or more of the grounds alleged in paragraphs 1-122 of this complaint and/or due to laches, waiver, estoppel and/or implied license.

124.    GI is entitled to a judicial declaration that the '448 patent is unenforceable.

**COUNT XIX:**
**DECLARATORY JUDGMENT**
**NON-INFRINGEMENT OF THE '747 PATENT**

125. GI incorporates the allegations of paragraphs 1-124 as if fully set forth herein.

126. Macrovision has alleged and claimed that GI infringes the '747 patent.

127. GI does not infringe any valid claim of the '747 patent and has not induced or contributed to the infringement of any valid claim of the '747 patent by another.

128. GI is entitled to a judicial declaration that it does not infringe the '747 patent.

**COUNT XX:**
**DECLARATORY JUDGMENT**
**INVALIDITY OF THE '747 PATENT**

129. GI incorporates the allegations of paragraphs 1-128 as if fully set forth herein.

130. On information and belief, the '747 patent is invalid for failure to meet the conditions of patentability set forth in 35 U.S.C. § 102, § 103, and/or § 112.

131. GI is entitled to a judicial declaration that the '747 patent is invalid.

**COUNT XXI:**
**DECLARATORY JUDGMENT**
**UNENFORCEABILITY OF THE '747 PATENT**

132. GI incorporates the allegations of paragraphs 1-131 as if fully set forth herein.

133. On information and belief, the '747 patent is unenforceable for one or more of the grounds alleged in paragraphs 1-132 of this complaint and/or due to laches, waiver, estoppel and/or implied license.

134. GI is entitled to a judicial declaration that the '747 patent is unenforceable.

**COUNT XXII:**
**DECLARATORY JUDGMENT**
**NON-INFRINGEMENT OF THE '842 PATENT**

135. GI incorporates the allegations of paragraphs 1-134 as if fully set forth herein.

136.    Macrovision has alleged that GI infringes the '842 patent in correspondence between the parties, and has demanded that GI pay royalties on the '842 patent as part of any settlement of Macrovision's dispute with GI.

137.    GI does not infringe any valid claim of the '842 patent and has not induced or contributed to the infringement of any valid claim of the '842 patent by another.

138.    GI is entitled to a judicial declaration that it does not infringe the '842 patent.

**COUNT XXIII:**
**DECLARATORY JUDGMENT**
**INVALIDITY OF THE '842 PATENT**

139.    GI incorporates the allegations of paragraphs 1-138 as if fully set forth herein.

140.    On information and belief, the '842 patent is invalid for failure to meet the conditions of patentability set forth in 35 U.S.C. § 102, § 103, and/or § 112.

141.    GI is entitled to a judicial declaration that the '842 patent is invalid.

**COUNT XXIV:**
**DECLARATORY JUDGMENT**
**UNENFORCEABILITY OF THE '842 PATENT**

142.    GI incorporates the allegations of paragraphs 1-141 as if fully set forth herein.

143.    On information and belief, the '842 patent is unenforceable for one or more of the grounds alleged in paragraphs 1-142 of this complaint and/or due to laches, waiver, estoppel and/or implied license.

144.    GI is entitled to a judicial declaration that the '842 patent is unenforceable.

**COUNT XXV:**
**DECLARATORY JUDGMENT**
**GI LICENSE**

145.    GI incorporates the allegations of paragraphs 1-144 as if fully set forth herein.

146.    An actual and present controversy exists concerning the legal rights and duties of Macrovision and GI with respect to the GI License.  Macrovision contends that the agreement has terminated and that GI is no longer a valid licensee, and has sued Motorola based on GI's continued production and sale of STBs.  GI contends that the GI License remains binding and enforceable such that GI is a valid licensee.  Moreover, GI contends that even if the GI License is terminated by reason of expiration of the original patents, GI continues to enjoy the right to use Macrovision anti-copying technology in its STBs pursuant to the terms of the GI License.

147.    A declaratory judgment in this case is necessary and proper as such a judgment would clarify the parties' rights and obligations under the GI License, and eliminate the uncertainty that has been generated with respect to the parties' rights and obligations under the GI License.

148.    Accordingly, GI requests that this court make a judicial declaration that (1) the GI License is binding and enforceable; or alternatively (2) to the extent the GI License has terminated by reason of expiration of certain Macrovision patents, GI retains the right to incorporate Macrovision's anti-copying technology into GI STBs.

### COUNT XXVI:
### DECLARATORY JUDGMENT
### PATENT MISUSE

149.    GI incorporates the allegations of paragraphs 1-148 as if fully set forth herein. 70.

150.    U.S. Patents 4,631,603, 4,577,216, 4,819,098, and 4,907,093 (the "Base Patents") disclose, among other things, the insertion of pseudo-sync pulses in video signals to disrupt automatic gain circuitry, the modification of color bursts in video signals to disrupt color correction circuitry, the insertion of back porch pulses to disrupt automatic gain circuitry, and

sync amplitude reduction to enhance video copy protection (collectively "Macrovision Copy Protection Technology"). The GI License confers rights in certain of Macrovision's Base Patents forming the core of the Macrovision Copy Protection Technology.

151. The Patents now asserted by Macrovision disclose mere minor improvements to the Macrovision Copy Protection Technology embodied in the Base Patents, yet Macrovision now seeks to expand the scope of those Patents now asserted to extract exorbitant royalties, many times greater than that justified by its mere improvements; in effect, extending the terms of the Base Patents impermissibly beyond their statutory expiration, and impermissibly extending the scope of the Patents now asserted.

152. Each of Macrovision's Base Patents have expired and, accordingly, GI is free to practice those techniques disclosed by the Base Patents without license or royalty to Macrovision.

153. Macrovision now seeks to prevent GI's free use of the Macrovision Copy Protection Technology disclosed by the Base Patents. Macrovision also seeks to extract royalties as if the Base Patents were still in effect.

154. GI is entitled to a judicial declaration that Macrovision has engaged in patent misuse, and therefore that Macrovision is not, among other things, entitled to seek royalties against GI under any applicable agreement and/or patents.

WHEREFORE, GI prays for the following relief:

A. A declaratory judgment that the '132 patent be declared invalid, void and/or unenforceable;

B. A declaratory judgment that GI be declared not to have infringed the '132 patent;

1     C.     A declaratory judgment that the '380 patent be declared invalid, void and/or

2 unenforceable;

3     D.     A declaratory judgment that GI be declared not to have infringed the '380 patent;

4
5     E.     A declaratory judgment that the '549 patent be declared invalid, void and/or

6 unenforceable;

7     F.     A declaratory judgment that GI be declared not to have infringed the '549 patent;

8     G.     A declaratory judgment that the '698 patent be declared invalid, void and/or

9
10 unenforceable;

11     H.     A declaratory judgment that GI be declared not to have infringed the '698 patent;

12     I.     A declaratory judgment that the '448 patent be declared invalid, void and/or

13 unenforceable;

14     J.     A declaratory judgment that GI be declared not to have infringed the '448 patent;

15
16     K.     A declaratory judgment that the '936 patent be declared invalid, void and/or

17 unenforceable;

18     L.     A declaratory judgment that GI be declared not to have infringed the '936 patent;

19     M.     A declaratory judgment that the '747 patent be declared invalid, void and/or

20 unenforceable;

21
22     N.     A declaratory judgment that GI be declared not to have infringed the '747 patent;

23     O.     A declaratory judgment that the '842 patent be declared invalid, void and/or

24 unenforceable;

25     P.     A declaratory judgment that GI be declared not to have infringed the '842 patent;

26     Q.     A declaratory judgment that (1) the GI License is binding and enforceable; or

27
28 alternatively (2) to the extent the GI License has terminated by reason of expiration of certain

---
22
COMPLAINT

Macrovision patents, GI retains the right to incorporate Macrovision's anti-copying technology into GI STBs.

R.     A declaratory judgment that Macrovision be declared to have engaged in patent misuse, and therefore that Macrovision is not, among other things, entitled to seek royalties against GI under any applicable agreement and/or patents;

S.     An order awarding GI its reasonable costs and attorneys' fees, in accordance with 35 U.S.C. § 285 and other applicable law.

\\\

1    T.    An order awarding such other and further relief as the Court deems just and

2    equitable.

3    Dated: September 6, 2007                          Respectfully Submitted,

4

5                                                      STEPTOE & JOHNSON LLP
                                                       Rebecca Edelson (No. 150464)
6                                                      Steven K. Davidson*
                                                       Scott W. Doyle*
7

8                                            By: _Rebecca Edelson_____

9                                                      Rebecca Edelson (No. 150464)
                                                       Attorney for Plaintiff
10                                                     GENERAL INSTRUMENT
                                                       CORPORATION
11

12

13   * Counsel seeking admission *pro hac vice*.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

1

**JURY DEMAND**

2

In accordance with Fed. R. Civ. P. 38(b), GI hereby demands a trial by jury on all issues

3

so triable.

4

Dated: September 6, 2007

5

Respectfully Submitted,

6

STEPTOE & JOHNSON, LLP
Rebecca Edelson (No. 150464)

7

Steven K. Davidson*
Scott W. Doyle*

8

9

By: _____

10

Rebecca Edelson (No. 150464)
Attorney for Plaintiff

11

GENERAL INSTRUMENT

12

CORPORATION

13

14

15

* Counsel seeking admission *pro hac vice*.

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT