EXHIBIT 2

# EXHIBIT 2

# AMENDMENT TO LICENSE AGREEMENT

2/2/94

WHEREAS General Instrument Corporation, the predecessor of General Instrument Corporation of Delaware ("GI"), and Macrovision Corporation ("Macrovision") entered into a license agreement on June 4, 1991 ("Agreement") with respect to incorporation of Macrovision's anticopy technology into GI's digital television compression and transmission system;

WHEREAS the market for GI's products has changed considerably since the Agreement was entered into and the parties agree that modifications to the Agreement are mutually desirable;

NOW THEREFORE, for good and valuable consideration, GI and Macrovision hereby modify and amend the Agreement as follows:

1.      The following sentence shall be added to the end of Section 1.1:

        The Process shall include any improvements made available by Macrovision.

2.      Section 1.6 of the Agreement is deleted in its entirety and replaced with the following:

        "DigiCipher System" shall mean a digital television compression and transmission system for which GI is the primary developer.  Primary developer, for the purposes of this Section, shall be any DigiCipher System in which GI supplies at least 4 of the following 7 subsystems:  video compression, audio compression, conditional access, transport/packetization, forward error correction, modulation, and user interface."

3.      Sections 1.7 and 4.1(c) of the Agreement are modified as follows:

        "Cable TV system operator" is changed to "cable TV multiple system operator or single non-affiliated cable TV system operator."

4.      The following shall be added as new Sections 1.10, 1.11, 1.12, 1.13, and 1.14 to the Agreement.

        1.10    "GI Products" shall mean set-top decoders, IRDs and other substantially similar end-user equipment which are manufactured by or for GI incorporating the Device and are sold and/or distributed by GI or its distributors to DigiCipher System Operators or their customers as ready-to-use finished products for receiving DigiCipher System transmissions.

        1.11    "IRD" shall mean any satellite integrated receiver/decoder that can be used to receive DigiCipher System satellite transmissions.

        1.12    "Product Notice" shall mean a notice that is displayed on the exterior of a product incorporating the Process in substantially the following form: "Macrovision Patent Nos. 4631603, 4577216, 4819098 licensed for non-commercial, home use only".  The notice shall be of legible size, in a readily viewable location on the back or bottom of the product and shall be silkscreened or applied in a non-removable manner.  In the printed collateral material that accompanies each such product, a

second notice located in an appropriate place shall state in substantially the following form: "This device incorporates an anticopy process technology that is protected by U.S. patents and other intellectual property rights. The anticopy process is licensed for non-commercial home use only. Reverse engineering or disassembly is prohibited."

1.13    "Other Products" shall mean set-top decoders, IRDs and other substantially similar end-user equipment used for receiving DigiCipher System transmissions that are not manufactured by or for GI and do not contain a Device.

1.14    "OEM IRDs" shall mean IRDs manufactured by or for a party other than GI that incorporate a Device sold to such party by GI.

5.    Section 2.1b. of the Agreement is deleted in its entirety and replaced with the following:

b.    The right to manufacture, sell and distribute the Device as an integral part of GI Products for use within the DigiCipher System; and

6.    The following shall be added as new Sections 2.1d. and 2.1e. to the Agreement.

d.    The right to manufacture, sell and distribute the Device to manufacturers of OEM IRDs for use within the DigiCipher System; and

e.    The right to develop the software, firmware and hardware necessary to utilize the Device in the DigiCipher System and to sell and distribute such software, firmware and hardware to DigiCipher System Operators.

7.    The following shall be added as a new Section 2.4 to the Agreement:

2.4    GI agrees that in the event GI licenses the right to manufacture, sell and/or distribute the DigiCipher System to any party, such party must obtain a manufacture, sales and distribution license from Macrovision for the right to incorporate the Process within any DigiCipher System product or software that such party manufactures, sells and/or distributes. GI shall notify such parties that the right to manufacture, distribute, sell or use the Process requires a license from Macrovision. Notwithstanding the preceding two sentences, purchasers of Devices pursuant to Section 2.1d. above, and entities distributing and/or selling GI Products, are not required to obtain a license from Macrovision to manufacture, use, sell and/or distribute OEM IRDs or to use, sell and/or distribute GI Products. GI shall require, as a condition of sale, that such purchasers display the Product Notice on each OEM IRD that is used, sold or distributed by such party.

8.    The following shall be added as a new Section 4.1d. of the Agreement:

d.    Notwithstanding Section 4.1b. above, if a DigiCipher System Operator does not utilize GI Products or OEM IRDs in its initial implementation, GI shall not be liable for the $25,000 fee due pursuant to Section 4.1b. for such DigiCipher System Operator. If the DigiCipher System Operator uses a combination of GI Products

2

and/or OEM IRDs plus Other Products, then the $25,000 fee will be reduced by a percentage expressed as the number of Other Products divided by the total number of DigiCipher System products installed at the time of first commercial use of the Process. For example, if at the time of first commercial use of the Process, 10% of the set-top decoders utilized by a DigiCipher System Operator are Other Products provided by a DigiCipher System licensee, then the $25,000 fee will be reduced by $2,500 to $22,500. If GI is not the provider of the DigiCipher System in the immediately preceding example, then no fee shall be due from GI. The proration of fees described herein shall not change GI's potential maximum payment obligation of five hundred thousand dollars ($500,000) described in subsection 4.1b.

9.    Section 7.2 is amended by adding the following to the end of such Section:

In order for GI to share in the Use Fees described above, GI must have provided at least 20% of the installed DigiCipher decoders in a particular system at the time of first commercial use of the Process in that system. Additionally, in the event the DigiCipher System has an implementation for a particular DigiCipher System Operator that is: i) provided in part by a DigiCipher System licensee; and ii) comprised of a combination of Other Products and GI Products; and iii) Macrovision has an agreement to share Pay-Per-View Transmission related revenues for use of the Process with the DigiCipher System licensee providing such Other Products; and iv) GI has provided at least 20% of the DigiCipher decoders in the system at the time of first commercial use of the Process in the system, then GI's share of Macrovision's Net Receipts from Use Fees shall be the greater of:

I.    $.35 \times GI\%$, or

II.    $[.35 \times GI\%] + [(.35 - YR\%) \times Y\%]$, where

$GI\%$ = GI's share of the installed DigiCipher decoders for a particular system at the time of first commercial use of the Process in that system

$Y\%$ = A DigiCipher licensee's share of installed DigiCipher decoders for a particular system, at the time of first commercial use of the Process in that system

$YR\%$ = A DigiCipher licensee's share of copy protection Use Fees, expressed as a decimal fraction, and not to exceed 0.35.

10.    Section 8.2 is deleted in its entirety and replaced with the following:

8.2    GI will apply the Product Notice to all GI Products sold or distributed pursuant to this Agreement.

3

IN WITNESS WHEREOF, the parties have executed this Amendment as of the _fifteenth_ day of _February_ , 1994.

MACROVISION CORPORATION

By: _[signature]_

Name: _Donn. S. Bakrs_

Title: _U.zo Pee'ld + CFO_

Date: _2/15/94_

GENERAL INSTRUMENT CORPORATION OF DELAWARE

By: _[signature]_

Name: _LESTER Hill_

Title: _EXECUTIVE V. P._

Date: _2-11-94_

4